**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ART MARKETING GROUP, et. al., ) | No. CV 04-2764 PHX RCB |
| Plaintiffs, ) | O R D E R |
| vs. ) | |
| POOR & CO., et. al., ) | |
| Defendants. ) | |

On December 6, 2004, Plaintiffs filed a complaint against Defendants alleging violations of the Sherman Act, the Robinson-Patman Act and the Clayton Act as well as asserting claims for unfair competition, interference with contract and business expectancy, conversion and breach of contract. Compl. (doc. # 1). On March 21, 2005, the Court granted in part and denied in part Defendants' motion (doc. # 13) to dismiss and compel arbitration of these claims and stayed the action pending arbitration. Currently before the Court are Plaintiffs' Motion to Reassume Jurisdiction Over Counts 7 Through 10 of the Civil Complaint as Against Entity Defendant (doc. # 25), which the Court will construe as a motion to

1  remove the reference of those claims to arbitration, and Motion to
2  Stay Arbitration Hearing on Merits of Counts 7 Through 10 as
3  Against Entity Defendant (doc. # 26).  Defendants filed their
4  responsive memoranda (doc. ## 27, 28) on March 27, 2006 and
5  Plaintiffs filed their reply memoranda (doc. ## 29, 30) on April 7,
6  2006.  The Court finds the matter suitable for decision without
7  oral argument.  See LRCiv 7.2(f).  Having carefully reviewed the
8  record and considered the arguments raised, the Court now rules.
9  **I.   Background**
10       In 1997 Plaintiff Art Marketing Group ("AMG") began
11 distributing life-size figures in the retail art market.  Compl.
12 (doc. # 1) ¶¶ 12-14.  These life-size figures were manufactured by
13 Poor & Co. doing business as Life Formations ("Life Formations").
14 Id.  After years of operating under a verbal agreement, under which
15 AMG asserts it had sole distributorship rights over Life
16 Formations' works in the retail art market, AMG and Life Formations
17 entered into a written contract on May 28, 2004 to resolve a
18 business dispute and provide for the continuation of their business
19 relationship.  Id. ¶¶ 14, 28.  Four provisions of this contract are
20 particularly relevant to the issues of arbitrability that are again
21 before this Court.

>      (1) Release Clause: "Both parties agree to waive any and all claims of any nature against the other party for all business and other transactions the parties have conducted since the beginning of their business relationship in 1997, to date."  Mot. (doc. # 25), Ex. 1 ¶ 1.
>
>      (2) Arbitration Clause: "In the event of a dispute over any interpretation or operation governed by this agreement the parties agree to submit said dispute to binding arbitration."  Id. ¶ 6.
>
>      (3) Non-Exclusivity Clause: "No exclusive right to sell

-2-

>Life Formations artworks shall accrue to the Arts Marketing Group." Id. ¶ 1.
>
>(4) Non-Solicitation Clause: "Life Formations agrees not to solicit sales from AMG's previously identified Design Firms, Special Project Clients i.e...Advanstar, TBN, for the next 12 months. Life formations may solicit sales of any gallery or gallery owner, at any time." Id. ¶ 2.

AMG asserts that, after this agreement was signed, Defendants wrongfully converted proprietary information belonging to AMG, began wholesaling directly to AMG's former customers by offering deeply discounted prices and attractive credit terms, told dealers AMG was no longer doing business with Life Formations, raised the prices charged to AMG, refused to honor price quotes given to AMG, and further undermined AMG's position in the market. See Compl. (doc. # 1) ¶¶ 30-31.

On December 6, 2004, AMG filed a Complaint raising eleven separate causes of action against Defendants including federal anti-trust claims (Counts 1 through 6), a claim for breach of contract (Count 11), and the following common-law tort claims: unfair competition (Count 7), interference with contract (Count 8), interference with prospective business advantage (Count 9), and conversion of property (Count 10). Id. ¶¶ 37-90.

**A. Order Referring Counts 7 Through 11 to Arbitration**

On December 29, 2004, Defendants moved to dismiss the Complaint and to compel arbitration arguing all the claims to be covered by the arbitration clause of the May 24, 2004 agreement. Mot. (doc. # 13). In determining the scope of the arbitration clause, the Court noted that the contract language chosen by the parties was virtually coextensive with the Ninth Circuit's definition of narrowly drawn arbitration clauses. Order (doc. #

23) at 5-6; compare Mot. (doc. # 25), Ex. 1 ¶ 6 ("In the event of a dispute over any interpretation or operation governed by this agreement the parties agree to submit said dispute to binding arbitration.") with Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983) (holding that a narrowly drawn arbitration clause applies to disputes "relating to the interpretation and performance of the contract itself"). On March 21, 2005, the Court issued an order (doc. # 23) granting in part and denying in part Defendants' motion (doc. # 13).

Defendants' motion was granted only with respect to Counts 7 through 11 as against Defendant Life Formations. Id. In so holding, the Court found the breach of contract claim (Count 11) to be squarely within the scope of the arbitration provision as a "dispute over any interpretation or operation governed by th[e] agreement." Id. at 7. The common-law tort claims (Counts 7 through 10) were similarly held arbitrable in light of the contract interpretation issues necessitated by ruling on those claims. Id. at 8. In particular, the Court noted that Count 10 would require interpretation of the release clause based on Life Formations' contention that the conversion claim was largely extinguished by the settlement and release negotiated in the May 28, 2004 agreement. Id. While release was not asserted as a defense to Counts 7 through 9, see Mot. (doc. # 13) at 4, the Court found that those claims would nevertheless turn on the interpretation of the non-exclusivity and non-solicitation clauses. See Order (doc. # 23) at 8 (citing Mot. (doc. # 13) at 4). Accordingly, the Court referred the claims asserted in Counts 7 through 11 against Defendant Life Formations to arbitration pursuant to 9 U.S.C. § 4

1  and the action was stayed pending the outcome of arbitration. <u>Id.</u>
2  at 10-11.

### B. Arbitration Proceedings

On February 9, 2006, the arbitrator issued a decision addressing (1) whether the parties' May 28, 2004 agreement released the claims contained in Counts 7 through 10 and (2) if not, whether those claims are subject to arbitration pursuant to the May 28, 2004 agreement. Mot. (doc. # 25), Ex. 2.

On the issue of release, the arbitrator found that the May 28, 2004 agreement could only release claims dealing with "business and other transactions the parties ha[d] conducted since the beginning of their business relationship in 1997" through the date of the agreement. <u>Id.</u> at 2. However, the arbitrator was also careful to point out that the agreement related more specifically to a "business dispute that arose during the period April 15, 2004 through May 18, 2004" concerning "outstanding accounts receivable, damage to Art Marketing Group property[1] and other matters specifically addressed." <u>Id.</u> (internal quotations omitted).

On the issue of arbitrability, the arbitrator followed this Court's March 21, 2005 order (doc. # 23) as the law of the case and determined that the common-law tort claims (Counts 7 through 10) would be heard on their merits in arbitration. <u>Id.</u> at 2-3.

---

[1] Plaintiffs describe the claim for damage to AMG property as the "art crate" claim, referring to an incident occurring on May 7, 2004 in which Defendants allegedly diverted crates of AMG display materials and art objects from an art show in Philadelphia. Compl. (doc. # 1) ¶¶ 26-27. Plaintiffs now concede that the May 28, 2004 agreement was intended to release that portion of Count 10 for conversion relating to the "art crate" claim. Mot. (doc. # 25) at 8; Compl. (doc. # 1) at 26-27, 82-85.

-5-

An arbitration hearing on the merits of Counts 7 through 11 is set to commence on May 9, 2006.  Resp. (doc. # 27), Ex. C at 1. The arbitrator has declined Plaintiffs' request to stay the proceedings on Counts 7 through 10.  <u>Id.</u> at 2.  Discovery closes on April 28, 2006 and a case management conference is currently set for April 24, 2006.  <u>Id.</u>

**II.   STANDARD OF REVIEW**

Federal substantive law governs questions of arbitrability. <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983).  The Federal Arbitration Act ("FAA") provides that [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The FAA leaves no place for discretion, but mandates that district courts direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.  <u>Simula, Inc. v. Autoliv, Inc.</u>, 174 F.3d 716, 719 (9th Cir. 1999) (citing <u>Dean Whitter Reynolds v. Byrd</u>, 470 U.S. 213, 218 (1985)).  The Supreme Court has stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24-25.  Nevertheless, a party cannot be compelled to arbitrate any matter or claim in the absence of having undertaken a contractual obligation to do so.  <u>Marchese v. Schearson Hayden Stone, Inc.</u>, 734 F.2d 414, 419 (9th Cir. 1984).  Finally, "a district court's order to arbitrate, with or without a retention of jurisdiction, has an ongoing effect, and the parties may return to the district court

for interpretation or modification of the order."  PMS Distrib. Co. v. Huber & Suhner, A.G., 863 F.2d 639, 642 (9th Cir. 1988) (internal quotations and citations omitted).

**III. MOTION TO REMOVE REFERENCE TO ARBITRATION**

Plaintiffs contend that the arbitrator's decision of February 9, 2006 on the issues of release and arbitrability satisfied what they perceive as the limited purpose of this Court's reference of the common-law tort claims to arbitration and, therefore, have asked the Court to reassume jurisdiction over Counts 7 through 10 as asserted against Defendant Life Formations.  See Mot. (doc. # 25) at 7-14.  The Court construes this as a motion to remove the reference of those claims to arbitration or, in the alternative, to interpret or modify the order (doc. # 23) referring those claims to arbitration.[2]

To understand the Court's determination of arbitrability as to Counts 7 through 10, the parties will find it beneficial to review the contract interpretation issues that necessitated the reference as to each Count.  The claims can be divided into two groups with different bases for arbitrability-- (1) Counts 7 through 9, which turn on interpretation and operation issues under the non-exclusivity and non-solicitation clauses of the May 28, 2004 agreement and (2) Count 10 for conversion, which the arbitrator has found to have been partially extinguished under the release clause.

---

[2] Defendants characterize Plaintiffs' motion as an untimely motion for reconsideration.  Resp. (doc. # 27) at 4, 6.  The Court does not agree.  Because the order (doc. # 23) referring this matter to arbitration has an "ongoing effect," Plaintiffs are entitled to seek interpretation or modification of that order.  See PMS Distrib. Co., 863 F.2d at 642.

-7-

**A. Arbitrability of Counts 7 Through 9**

In finding Counts 7 through 9 within the scope of the arbitration clause, the Court noted that "Defendants also assert defenses to the other common law claims which similarly require interpretation of the contract." Order (doc. # 23) at 8. The statement referenced the dispute raised by Counts 7 through 9 over the interpretation of the non-exclusivity and non-solicitation clauses of the May 28, 2004 agreement. See id. (citing Mot. (doc. # 13) at 4). Although the non-exclusivity and non-solicitation clauses have been repeatedly discussed as bases for arbitration in Defendants' motion to compel arbitration (doc. # 13) as well as their response (doc. # 27) to Plaintiffs' currently pending motion, Plaintiffs have consistently ignored these arguments in both sets of briefings (doc. ## 17, 29).

To clarify, the Court finds that the allegations of Counts 7 through 9 by necessity require interpretation of the parties' relationship as defined in the May 28, 2004 agreement. Plaintiffs' claims for unfair competition (Count 7), interference with contract (Count 8), and interference with prospective business advantage (Count 9) are all premised on Defendants' allegedly "unlawful" and "improper" conduct. Compl. (doc. # 1) ¶¶ 28, 69, 73, 78.

The focus on the release clause in the arbitration proceedings to date would seem to suggest that the May 28, 2004 agreement was primarily an agreement relating to the parties' past conduct. It is important to recall, however, that the agreement also served to define the parties' business relationships going forward-- as between themselves as well as among third parties such as the art galleries. See Mot. (doc. # 25), Ex. 1 at 1 ("The parties agree

continue [sic] to transact business together under the following terms and conditions for a period of ONE YEAR."). Because AMG and Life Formations took the care to define the nature of their business relationships in the non-exclusivity and non-solicitation clauses of their agreement, id. at 1-2, the allegations of Defendants' "unlawful" and "improper" conduct underlying Counts 7 through 9 can only be evaluated by looking first to the operative terms of the May 28, 2004 agreement.

The arbitration proceedings to date have examined the release clause, but have not yet dealt with the non-exclusivity and non-solicitation clauses. Therefore, the fact that the release clause was found not to extinguish the claims in Counts 7 through 9 is immaterial to their arbitrability. The arbitration hearing on the merits of Counts 7 through 9 should proceed as scheduled.

**B. Arbitrability of Count 10**

The release clause was the sole basis argued by Defendants and accepted by the Court for referring the conversion claim in Count 10 to arbitration. See Mot. (doc. # 13) at 4 ("The conversion claim . . . turns in large part on conduct that occurred before the parties signed the Settlement Agreement . . . ."); Order (doc. # 23) at 8 ("[R]uling on the conversion claim will necessitate interpreting the release clause of the contract.").

On February 9, 2006, the arbitrator found the release clause to extinguish only that portion of the conversion claim referred to by Plaintiffs as the "art crate" claim. See Mot. (doc. # 25), Ex. 2 at 2; Compl. (doc. # 1) at 26-27, 82-85. Because no other issues of contract interpretation were asserted as bases for compelling arbitration of Count 10, the Court would be inclined to remove the

reference to arbitration as to the remainder of Plaintiffs' conversion claim. However, the discovery deadline has not yet closed and it is not clear whether the balance of discovery will produce any additional claims that the arbitrator would find barred by the release clause. Although it may well be that the "art crate" claim is the only portion of Count 10 that will be found to have been released, the Court is reluctant to remove the reference until the arbitrator has had an opportunity to interpret and apply the release clause in light of all claims ultimately presented.

Therefore, Count 10 will remain under reference to arbitration only for the limited purpose of determining to what extent Plaintiffs' conversion claim was released by the May 28, 2004 agreement. The arbitrator's decision in this regard, made in consideration of any conversion claims asserted after the close of discovery, will be treated by the Court as the law of the case on the issue of release.

Beyond the interpretation of the release clause, no portion of Plaintiffs' conversion claim (Count 10) may proceed to an arbitration hearing on the merits.

**IV. MOTION TO STAY ARBITRATION HEARING**

Contemplating the possibility that their motion to remove the reference of Counts 7 through 10 to arbitration (doc. # 25) could be rendered moot if not ruled upon prior to the commencement of the arbitration hearings, Plaintiffs have requested an order staying those hearings as to Counts 7 through 10. Mot. (doc. # 26) at 2-3. Because this contingency has not arisen, the motion to stay the arbitration hearings is denied and dismissed as moot.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Reassume

- 10 -

Jurisdiction Over Counts 7 Through 10 of the Civil Complaint as Against Entity Defendant (doc. # 25) is construed as a motion to remove the reference of those claims to arbitration and is DENIED. Those claims will remain under reference to arbitration pursuant to 9 U.S.C. § 4 in accordance with this order.  This action will remain stayed pending the outcome of arbitration in accordance with the order (doc. # 23) issued on March 21, 2005.

    IT IS FURTHER ORDERED that Plaintiffs' Motion to Stay Arbitration Hearing on Merits of Counts 7 Through 10 as Against Entity Defendant (doc. # 26) is DENIED and dismissed as moot.

    DATED this 25th day of April, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record